UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                :
JIMMY GASTON BARBERAN,        :
                :
            Plaintiff,    :  **REPORT & RECOMMENDATION**
                :  07 Civ. 3337 (CLB)(MDF)
    -against-                :
                :
PEOPLE'S BANK,              :
                :
            Defendant.  :
                :
------------------------------------------------------------x

TO: THE HONORABLE CHARLES L. BRIEANT, U.S.D.J.

      Plaintiff *pro se* Jimmy Gaston Barberan ("Barberan") brings this action against Defendants People's Bank, now known as People's United Bank ("People's"), and John A. Klein ("Klein"), People's Chairman, President, and CEO, asserting civil RICO claims pursuant to 18 U.S.C. § 1962 based on allegations of mail fraud, wire fraud, and extortion. Currently pending before the Court is People's motion to dismiss Barberan's Amended Complaint pursuant Fed. R. Civ. P. 9(b), for failure to plead fraud with particularity, and 12(b)(6), for failure to state a claim (Doc. #'s 7-9, 11, 12, 15-17). For the reasons that follow, I respectfully recommend that your Honor grant People's motion.

## BACKGROUND

      Barberan filed his original Complaint on April 26, 2007, in response to which People's filed a motion to dismiss.[1] Following oral argument, the Court ruled that People's motion would

---

[1] After filing and serving his original Complaint, Barberan also filed a RICO Disclosure Statement ("Disclosure Statement"), purportedly setting forth the facts upon which his RICO claims are based (Doc. # 6). While submission of the Disclosure Statement was not ordered by the Court, the Court will consider it in deciding this motion to the extent that statements therein do not conflict with allegations in the Amended Complaint. *Cf. McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir. 1992) ("In analyzing the issues on this motion to dismiss, we must take as true the facts as alleged in the

be deemed withdrawn, with leave to renew, upon submission of an Amended Complaint. The Court advised Barberan that he needed to state his claims with particularity if he was alleging predicate acts of fraud. Barberan filed his Amended Complaint on August 23, 2007, and People's renewed its motion to dismiss.

In his Amended Complaint, which is substantially the same as his original Complaint, *see* Supplemental Br. – Renewed Mot. to Dismiss Ex. A (redlined version of Amended Complaint), Barberan alleges that People's and Klein, a newly-added defendant,[2] engaged in racketeering activity comprised of extortion, in violation of 18 U.S.C. § 1962(c), when People's demanded payment of a debt not owed by Barberan using the U.S. Mail. Am. Compl. at 4. He also alleges a RICO conspiracy, stating that "PEOPLES BANK in concert with various John and Jane Does violated 18 U.S.C. § 1962(d) through a conspiracy to take money and property from Plaintiff." *Id.* The Amended Complaint alleges fourteen predicate acts committed by the RICO enterprise, thirteen of which are mail fraud, as follows: "PEOPLES BANK, from a location originating in Stamford, Connecticut prepared and uttered false documents through the United States Mail Service with the intention that Barberan rely on the false documents to the detriment of losing money and property." *Id.* at 6-10. An amount of money damages allegedly suffered as a result of each of these thirteen predicate acts is set forth as well. The thirteen predicate acts were all "accomplished through unknown John and Jane Does" and occurred over a time period ranging from June 12, 1999 to February 12, 2003. Barberan alleges a fourteenth predicate act of wire

---

complaint and as supplemented by the RICO case statement ordered by the district court.").

[2] It is unclear whether Klein was ever properly served with the Amended Complaint, as he has neither responded to the Amended Complaint nor otherwise appeared in the action. However, the Court will assume that he is a party to the litigation in deciding this motion.

fraud, as follows: "Beginning about March 8, 2003 and continuing contemporaneously, PEOPLES BANK, from a location originating in Stamford, Connecticut, facilitated unknown third party debt collectors in a campaign of extortion. Unknown parties used wire communications to harass, intimidate and annoy Barberan in an attempt to extort money from Barberan." *Id.* at 10.[3]

Barberan disputes that he owed People's any money, but alleges that to the extent he might have, he "has filed a procedurally proper and timely billing error dispute" *id.* at 2, but that "[u]nknown third party debt collectors have repeatedly violated the Fair Debt Collections Practices Act, the Fair Credit Billing Act and Unfair or Deceptive Acts or Practices by attempting to collect an alleged debt without resolving a billing error dispute . . . ." *Id.* Barberan alleges that the harassment to which he has been subjected "in the name of PEOPLES BANK demonstrates that PEOPLES BANK is engaged in racketeering . . . ." *Id.* at 3.

Lastly, added to the Amended Complaint is a lengthy paragraph providing legal support for the allegation that People's and Klein "acted *ultra vires* in lending credit," *id.* at 5-6, although it is unclear whether Barberan seeks to assert a separate claim based on this legal theory.

## DISCUSSION

I. **Applicable Legal Standards**

In *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007), the Supreme Court reconsidered the standard for deciding a defendant's motion to dismiss under Rule 12(b)(6), and

---

[3]Barberan's RICO Disclosure Statement states that he received mailings from People's that "began June 12, 1999 and continue concurrent with the making of this Statement," Disclosure Statement at 5, and that the mailings he received from various John and Jane Does began on March 8, 2003 "and continue with the most recent of March 1, 2007." *Id.* The Disclosure Statement nowhere mentions acts of wire fraud.

applied "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). While *Twombly* did not make clear whether this change from traditional pleading standards applies outside the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 n.2 (2d Cir. 2007). Accordingly, a complaint may be dismissed under this standard where it fails to plead "'enough facts to state a claim to relief that is plausible on its face.'" *Johnson & Johnson v. Guidant Corp.,* No. 06 Civ. 7685, 2007 WL 2456625, at *4 (S.D.N.Y. Aug. 29, 2007) (quoting *Twombly,* 127 S. Ct. at 1974). "'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 127 S. Ct. at 1965). "Where a plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed.'" *Id.* (quoting *Twombly,* 127 S. Ct. at 1974). Nevertheless, courts must continue to accept all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI,* 493 F.3d at 98. The allegations of a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Thus, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (internal quotation marks and citations omitted).

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake,

4

the circumstances constituting fraud or mistake shall be stated with particularity." "This provision applies to RICO claims for which fraud is the predicate illegal act." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (citation omitted). "Dismissal under either rule [9(b) or 12(b)(6)] is proper where the plaintiff cannot recover on the facts he has alleged." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (citation omitted).

## II. Failure to Plead Predicate Acts with Particularity

In the Amended Complaint, Barberan alleges a violation of 18 U.S.C. § 1962(c)[4] based on predicate acts of mail and wire fraud and states that the "racketeering activity is comprised of extortion." Am. Compl. at 4. The RICO statute defines "racketeering activity" to include acts indictable under 18 U.S.C. § 1341, relating to mail fraud, as well as acts indictable under 18 U.S.C. § 1343, relating to wire fraud, and 18 U.S.C. §§ 891-894, relating to extortionate credit transactions. *See* 18 U.S.C. § 1961(1)(B). People's argues that Barberan's civil RICO claims should be dismissed for failure to plead the underlying predicate acts of fraud with sufficient particularity.

"In the RICO context, Rule 9(b) calls for the complaint to 'specify the statements it

---

[4] RICO subsection 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" In addition to his failure to state a RICO claim based on his failure to plead the underlying predicate acts of mail and wire fraud with sufficient particularity, as explained herein, Barberan fails to state a claim for violation of RICO section 1962(c) due to his failure to allege sufficiently the identity of the RICO enterprise. "To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must prove: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Fleishman v. Hyman*, 00 Civ. 0009, 2004 U.S. Dist. LEXIS 19793, at *24 (S.D.N.Y. Sept. 30, 2004) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The Court cannot determine, based on the muddled and contradictory allegations in the Amended Complaint, whether the alleged enterprise is the corporate entity, People's, or a separate association-in-fact of which People's is a member. Thus, for this additional reason, Barberan's claim under § 1962(c) should be dismissed.

claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.' The plaintiffs must also 'identify the purpose of the mailing within the defendant's fraudulent scheme.' In addition, the plaintiffs must 'allege facts that give rise to a strong inference of fraudulent intent.'" *Moore*, 189 F.3d at 173 (citations omitted).

With respect to the allegations of mail fraud, the Amended Complaint, despite the Court's admonition, fails to specify any statements made in the documents sent to Barberan which were false or misleading or to give particulars as to the respect in which any statements made in those documents were fraudulent. Drawing all reasonable inferences in favor of Barberan, the most that can be ascertained from the Amended Complaint is that Barberan received what must have been credit card statements from People's (he only alleges that People's "prepared and uttered false documents") which presumably billed him for amounts not due and owing. However, he does not allege the respect in which the amounts in question as set forth in those "documents" were erroneous or fraudulent. *See, e.g.*, Am. Compl. at 6 ("About June 12, 1999, PEOPLES BANK, from a location originating in Stamford, Connecticut prepared and uttered false documents through the United States Mail Service with the intention that Barberan rely on the false documents to the detriment of losing money and property. This predicate act accomplished through unknown John and Jane Does damaged the property interests of Barberan in a sum not less than $2,092.70.").[5] His allegations of wire fraud are similarly deficient, providing no

---

[5]Notably, the dollar amounts of the losses that Barberan alleges he incurred as result of the predicate acts as set forth in the Amended Complaint add up to a figure that far exceeds the alleged injury of $15,949.36 set forth on page 6 of the RICO Disclosure Statement. One can only surmise that the discrepancy is due to the fact that Barberan does not dispute the amount of credit card charges set forth in each of those "false documents"in their entirety, but only in part. However, he gives no

6

specifics whatsoever as to any allegedly false or misleading statements made in any wire communications, nor do they specify when such communications were made, other than the initial alleged communication of March 8, 2003. *See* Am. Compl. at 10 ("Beginning about March 8, 2003 and continuing contemporaneously . . . ").[6]

Barberan's RICO Disclosure Statement likewise fails to give any specifics. The Disclosure Statement states as follows:

> If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be state [sic] with particularity." FRCP 9(b). Identify time, place and contents of the alleged misrepresentations, and the identify [sic] of person to whom and by whom the alleged misrepresentations were made:
> **Answer:** Based on reasonable information and belief, Barberan is unaware of any securities involved in this action. Barberan reserves the right to amend this answer after discovery.

Disclosure Statement at 6-7.

Thus, at the pleading stage, Barberan provides no particulars whatsoever with respect to the fraudulent statements allegedly made by the Defendants. Nor, for that matter, does he provide any allegations linking individual defendant Klein to any alleged fraudulent statements. *See Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'") (citations omitted). Moreover, the Amended Complaint is bereft of any factual allegations giving rise to a strong inference of fraudulent

---

particulars as to which charges he disputes or why.

[6]The RICO Disclosure Statement only alleges that Barberan received mailings of false documents, not wire communications, from various John and Jane Does, which "began on March 8, 2003 and continue with the most recent of March 1, 2007," Disclosure Statement at 5, without giving any dates in between.

7

intent. In the absence of any specific allegations regarding fraudulent statements made in either the mail or wire communications that Barberan received, there is no way of inferring an intent to defraud based on those communications. Finally, Barberan's claim that he was defrauded is belied by his allegation that he "filed a procedurally proper and timely billing error dispute." Am. Compl. at 2; *see also* Am. Compl. at 10 ("I have timely and properly disputed whether I owe PEOPLES BANK a sum of money.").

"Having failed to plead any predicate act of mail and wire fraud, [Barberan has] not stated a RICO action against the [Defendants]." *Mills*, 12 F.3d at 1176 (citations omitted); *see also, e.g., Fleishman*, 2004 U.S. Dist. LEXIS 19793, at *27 (claims of mail and wire fraud were not well-pleaded under Rule 9(b) and could not provide a basis for the complaint's RICO claims).[7]

### III.  Additional Pleading Deficiencies under RICO

The Amended Complaint makes explicit reference only to subsections (c) and (d) of 18 U.S.C. § 1962 and does not on its face assert violations of any other subsection thereof. However, Barberan states in his RICO Disclosure Statement that he is also asserting claims under subsections (a) and (b) of § 1962,[8] *see* Disclosure Statement at 3-4, and People's has assumed

---

[7]Insofar as Barberan might be including extortionate credit transactions among the predicate acts of racketeering activity, although not pled as such, such allegations likewise cannot support claimed violations of 18 U.S.C. § 1962(c). As noted above, when it comes to extortionate credit transactions, racketeering activity under RICO is limited to acts prohibited by 18 U.S.C. §§ 891-894. An extortionate extension of credit is defined therein as "any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(6). The Amended Complaint contains no allegations whatsoever of any such understanding between Barberan and People's.

[8]However, in a later section of the Disclosure Statement, where the question posed is, "If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise," Barberan answered, "Not applicable." Disclosure Statement at 10.

8

that Barberan is asserting such claims and has addressed them in its motion papers. Therefore, the Court will likewise assume that Barberan intended to assert such claims in his Amended Complaint.

To state a violation under any of subsections (a), (b), or (c) of the RICO statute, Barberan must allege a "pattern of racketeering activity," which he has failed to do, as explained above, by failing to allege the predicate acts of mail and wire fraud with the requisite particularity. Therefore, his claims under all of those subsections of the RICO statute should be dismissed. Moreover, based on his failure to state a claim for a substantive RICO violation under any of subsections (a)-(c) of § 1962, Barberan's one-line RICO conspiracy claim under § 1962(d),[9] *see* Am. Compl. at 4 ("PEOPLES BANK in concert with various John and Jane Does violated 18 U.S.C. § 1962(d) through a conspiracy to take money and property from Plaintiff."), should be dismissed as well. *See Discon, Inc. v. Nynex Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations.") (citations omitted), *vacated on other grounds*, 525 U.S. 128 (1998).

However, as set forth below, the Court finds additional grounds to conclude that Barberan fails to state claims for violations of RICO sections 1962(a) and 1962(b).

*18 U.S.C. § 1962(a)*

RICO section 1962(a) states that "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or

---

[9]RICO section 1962(d) states that, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

9

invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." The Second Circuit has held that "to state a civil claim under § 1964(c) for a violation of § 1962(a), a plaintiff must allege injury 'by reason of' defendants' investment of racketeering income in an enterprise." *Ouaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990) (citations omitted). "[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Id.* at 83. Barberan fails to plead any facts indicating an injury caused by People's or Klein's use or investment of the alleged proceeds of racketeering activity. Rather, the Amended Complaint alleges only that the Defendants sought to extort money from Barberan through acts of mail and wire fraud, as a result of which he suffered damage to his property interests.

Furthermore, in the RICO Disclosure Statement, which contains Barberan's only allegations of a violation of 18 U.S.C. § 1962(a), he alleges on one page that the Defendants "use proceeds from [their] pattern of racketeering activity for the furtherance of the legitimate aspects of the organizations . . .," Disclosure Statement at 3, while on a later page he states relative to his § 1962(a) claim that both the recipient of the income derived from the pattern of racketeering activity and the use or investment of such income "will be determined upon discovery." *Id.* at 10. The RICO Disclosure Statement nowhere alleges injury to Barberan resulting from the use or investment of such income, only injury resulting from the commission of the alleged predicate acts. In describing the causal relationship between the alleged injury and the violation of the RICO statute, Barberan states, "If not for Defendants wrongful acts of fraud, mail fraud and extortion, Plaintiff and others similarly situated would not have been deprived of their money and

property." *Id.* at 11; *see also id.* at 6 ("Barberan is the victim of threats, duress, coercion and fraud perpetrated by the defendants on more than 80 occasions with demands for and the loss of money and property belonging to Barberan.").

Based on the foregoing, any claim that Barberan could be found to have alleged under RICO section 1962(a) should be dismissed. *See Kaczmarek v. Int'l Bus. Mach. Corp.*, 30 F. Supp. 2d 626, 628-29 (S.D.N.Y. 1998) (dismissing claim under § 1962(a) for failure to plead a use or investment injury).

### *18 U.S.C. § 1962(b)*

RICO section 1962(b) states that "[i]t shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." First, as noted in footnote 8, *supra*, the RICO Disclosure Statement states that § 1962(b) is not applicable to this case. However, assuming *arguendo* that Barberan intended to assert such a claim, it cannot succeed, since Barberan does not allege an "acquisition injury" or a "maintenance injury" as required to state a claim under § 1962(b). *See Discon, Inc.*, 93 F.3d at 1062-63 ("In the context of subsection 1962(a), therefore, we have required that the plaintiff allege a use or investment injury that is distinct from the injuries resulting from predicate acts. Similarly, other circuits have held that, in order to state a cause of action under subsection 1962(b), plaintiffs must allege an acquisition injury, analogous to the use or investment injury required under § 1962(a) to show injury by reason of a § 1962(b) violation.") (internal quotation marks and citations omitted). As noted above in the discussion of Barberan's § 1962(a) claim, he only alleges injuries resulting from the commission of predicate acts. In the absence of a distinct

11

acquisition or maintenance injury, Barberan cannot state a RICO § 1962(b) claim. *See Kaczmarek*, 30 F. Supp. 2d at 629 (dismissing claim under § 1962(b) for failure to plead an acquisition or maintenance injury).

IV.   **Allegation that Defendants Acted *Ultra Vires***

Barberan added to his Amended Complaint an allegation that Klein and People's acted *ultra vires* in lending credit, and that an *ultra vires* contract is void. *See* Am. Compl. at 5-6. In support of his assertion that a national bank can lend its money but not its credit, Barberan takes statements out of context from some rather old cases from other jurisdictions. *See Fed. Intermediate Credit Bank v. L'Herisson*, 33 F.2d 841 (8th Cir. 1929); *First Nat'l Bank of Tallapoosa v. Monroe*, 69 S.E. 1123 (Ga. 1911); *Merchants' Bank of Valdosta v. Baird*, 160 F. 642 (8th Cir. 1908); *Nat'l Bank of Commerce v. Atkinson*, 55 F. 465 (C.C.Kan. 1893); *Seligman v. Charlottesville Nat'l Bank*, 3 Hughes 647 (C.C.Va. 1879). However, those cases involved banks guaranteeing another party's debt or obligation; they did not involve credit cards. Moreover, Barberan provides no legal support, and this Court can find none, for the proposition that a national bank may not issue credit cards. *See, e.g., Colorado Springs Nat'l Bank v. United States*, 505 F.2d 1185, 1189 (10th Cir. 1974) ("Under the rulings of the Comptroller of the Currency, a bank may issue credit cards. See Comptroller's Manual for National Banks, Pars, 7.7376(b) and 7.7378."). Furthermore, Barberan's allegations are in any event contradictory, for while he asserts that an *ultra vires* contract is void and unenforceable, he denies the existence of a contract between him and People's. *See* Am. Compl. at 10 ("I am not in receipt of any document, which verifies that I presently have a contract with PEOPLES BANK."); Am. Compl. at 2 ("Barberan is uncertain of whether a contract for debt a.k.a. a 'credit card member

12

agreement' ever existed *vis a vis* Barberan and PEOPLES BANK or PEOPLES BANK in any other appellation.").

Therefore, to the extent that Barberan seeks to add a claim on the theory that the Defendants acted *ultra vires*, or "creat[ed] an *ultra vires* debt," Pl.'s Supplemental Br. in Opp. to Def.'s Mot. to Dismiss at 4, such claim should be dismissed. Alternatively, if this allegation is offered to support his RICO claims, it fails to do so, since this alleged *ultra vires* conduct is not "racketeering activity" as defined by the statute.

## CONCLUSION

For the foregoing reasons, I recommend that People's motion be granted and the action be dismissed with prejudice.[10]

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Charles L. Brieant, at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601 and to the chambers of the undersigned at this Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later

---

[10]Because I recommend that the action be dismissed under Fed. R. Civ. P. 9(b) and 12(b)(6), I need not address People's contention that Barberan's claims are time-barred.

appellate review of any order to judgment that will be entered by Judge Brieant. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S.Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extension of time to file objections must be made to Judge Brieant and should *not* be made to the undersigned.

Dated: January 24, 2008
       White Plains, New York

Respectfully submitted,

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing have been sent to the following:

Honorable Charles L. Brieant, U.S.D.J.

Jimmy Gaston Barberan
Plaintiff *Pro Se*
15 Woodlake Drive
Middletown, NY 10940

William J. Wenzel, Esq.
Attorney for Defendant, People's Bank
Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06601